Dissenting Opinion.
Bermudez, C. J.
On the 1st of March, 1880, the day on which this appeal was made returnable, the appellants, producing a certificate of that date, from the clerk of the lower court, to the effect that a delay of thirty days was necessary to complete the transcript of appeal— obtained here, on motion, an order “ that the delay for filing the transcript of appeal herein be extended for thirty days.”
The transcript was filed on the 2d of April following. On the 18th *1126 of March last, 1882, a motion to dismiss was made, on the ground that the transcript was filed after the expiration of the extension and, therefore, too late.
The appellants contend that the thirty began running, not on the 1st of March, but on the 5th of March, because it is then that the third judicial day following the return day, which was the 1st of March, expired, and that they consequently had until the 4th of April to file the transcript.
The thirty days which the appellants wished, applied for and obtained, were the thirty days required, not by them, but by the clerk, to complete the transcript. The certificate of that officer, dated the 1st of March, shows that “ a delay of thirty days is necessary.” The clerk meant and virtually said, thirty days, to be reckoned from the 1st of March.
Whether the application for further time be made on the very return day or within the three judicial days following it, is immaterial, provided it be made before .the expiration of the last day.
The extension allowed is simply an expansion of the delay of grace, whether it has not' begun to run at all, or has run in part, to the last day of the “ further time” allowed. 28 An. 901; 32 An. 28, 801.
The argument that by ordering “ that the delay for filing the transcript of appeal herein be extended for thirty days,” the Court has enlarged the time allowed by law, by thirty days, has no force. It does not take this case out of the operation of the jurisprudence on that subject, for there is not one instance, in which further time was allowed, in which the same argument could not be made. What becomes, then, of the adjudications which have computed the delay allowed from the day on which it was asked ¶ Ruling to maintain the appeal simply sets them at naught.
The transcript should have been filed on the last of the thirty days, that is, on the 31st of March. Filed two days subsequently, it came too late. 32 An. 28; 28 An. 901; 24 An. 333, and uureported cases.
The motion to dismiss, though made long' after the 31st of March, 1880, was in time.
Appellees cannot be held to constant vigilance after the legal delay has passed, in watching, day by day, the docket, to see at what time the negligent appellant' will file the transcript.
“ A party who neglects to file the transcript seasonably, will be considered as having abandoned his appeal.” 3 L. 251; 4 An. 350; 9 An. 21; 10 An. 75.
The argument that the delay was extended ror, and not to thirty days, may be ingenious, but it attempts a distinction without a difference, and reduces itself to a mere play upon words.
*1127 When “ further tíme ” is allowed by this Court, under Article 888, C. P., to bring up the transcript, the extension granted is to he computed from the day on which it is asked.
The authorities to which our attention has been called by appellants, and which have received it, do not support the specious theory invoked.
I think that the appeal should be dismissed.
Poci-ié, J. I concur in the dissenting opinion of the Chief Justice.
On the Merits.
The opinion of the Court was delivered by
Bermudez, C. J.
This is an action to bold agents liable to third parties for injury sustained in consequence of an alleged dereliction of duty, or non-feasance, on their part.
The plaintiffs sue to recover $25,000'as damages, for great bodily injuries and suffering, resulting in the death of their minor son, occasioned by the giving way, in September, 1879, of the gallery of a house iu this city, owned by a non-resident, but, at the time, in the possession and under the control and administration of the defendants, as his paid agents.
The defense was a general denial.
Prom a judgment in favor of the defendants, the plaintiffs have appealed.
The evidence shows the following facts:
The house in question and the adjoining one, both under the same roof, belonged at the time to Denis Coutreaud, who then resided in Prance. A. Roehercau & Co., the defendants, were his agents, having control as such of the property. Half of the property was rented and occupied. The other half was not rented and was vacant. There was in front of the- entire building, which was two-story, a balcony, as wide as the sidewalk. It needed repairs. The defendants knew of its condition. The vacant tenement had been permitted by the agents, on two or more occasions not long before the calamity, to be used for purposes of amusement. On the 18th of' September, a party, a raffle and a dance, was given in the unoccupied portion of the building, without tlie authority or knowledge of the defendants, by an individual, who bad procured a key from a neighbor and taken possession of the premises. He gave the entertainment in the upper story, charging an admission fee. The son of plaintiffs; an intelligent lad thirteen or fourteen years old, and a girl, in whose company he kept, on payment of the fee, obtained entrance. There were from thirty to thirty-five persons at the party. At about half-past ten o’clock iu the night, a number of persons, twelve or thirteen, among- whom was *1128 young Delaney, moved, it is inferred rushed, to the gallery, and were upon it when it gave way, and all who were on it fell with it. The young man was found unconscious on the sidewalk, with iron braces and some flooring upon him. He was removed from the spot to his home.' Tlie injuries received consisted in a concussion of the brain and fractures of the parietal and occipital bones of the skull, as well as bruises on the arms and legs. He is said to have been insensible to the end. Ho received all possible surgical and other attention, but died early in the morning.
The contention is, that as the injuries .received caused intense suffering, and as they were occasioned by the falling of the gallery, which was in very bad condition, to the knowledge of the defendants, who, as the agents of the owner, were bound to keep it in good order, and who without justification neglected to do. so, their Ann and each member thereof are responsible in solido for the damages claimed.
The theory on which the suit rests is, that agents are liable to third parties injured, for .their non-feasance.
In support of that doctrine, both the common and the civil law are invoked.
At common law, an agent is personally responsible to third parties for doing something which he ought not to have done, but not for not doing something which he ought to have done, the agent, in, the latter case, being liable to Ms principal only, Ifor non-feasance! or mere neglect in the performance of duty, the responsibility therefor! must arise from some express or implied obligation between particular] parties standing in privity of law or contract with each other. No" man is bound to answer for such violation of duty or obligation except to those to whom he has become directly bound or amenable for his conduct.//
Every one, whether he is principal or agent, is responsible directly to persons injured by his own negligence, in fulfilling obligations resting upon him in his individual character and which the law imposes upon him, independent of contract. * No man increases or diminishes Ms obligations to strangers by becoming an agent."5 If, in the course of his agency, he comes in contact with the person or property of a stranger, he is liable for any injury he may do to either, by his negligence, in respect to duties imposed by law upon him in common with all other men.
An agent is not responsible to third persons for any, negligence in the performance of duties devolving upon him purely from his agency, since he cannot, as agent, be subject to any obligations towards third persons other than those of his principal. Those duties are not imposed upon him by law. He has agreed with no one, except his principal, to *1129 perform them. In failing to do so, he wrongs no one but his principal, who alone can hold him responsible.
The whole doctrine on that subject culminates in tile proposition that wherever the agent’s negligence, consisting in his own wrong doing, therefore in an act, directly injures a stranger, then such stranger can recover from the agent damages for the injury. Story on Agency, 308, 309; Ib. on Bailments, 165; Shearman & Redfield on Negligence, 111, 112, Ed. 1874; Evans on Agency, notes by Ewell, 437, 438; Wharton on Negligence, 535, 78, 83, 780.
It is an error to suppose that the principle of the civil law, on the liability of agents to third persons, is different from those of the common law. It is certainly not broader.
While treating of “ negligence in discharge of duties not based on contract,” which had not previously been considered, Wharton, beginning the third book of his remarkable work on Negligence, says:
The Roman law in this respect rests on the principle that the necessity of society requires that all citizens should be educated to exercise care and consideration in dealing with the persons and property of others. Whoever directly injures another’s person or property by the neglect of such care, is in culpa and is bound to make good the injury caused by his neglect. The general responsibility is recognized by the Aquilian^aw, enacted about three centuries before Christ, which is the basis of l¿pmaií»}¡nrisprudence in this relation. Guipa of this class consists mftiuly in commission, in faciendo. Thus, an omission by a-stranger to'perform an act of charity is not culpa; it is culpa however to inadvertently place obstacles on a road, over which another falls and is hurt; to kindle afire by which another’s property may be burned} to dig a trench which causes another’s wTall to fall. He subsequently states that the following are cases in which' no responsibility can possibly attach :
“When'a man does everything in his power to avoid doing the mischief, or when it is of a character utterly out of the range of expectation, the liability ceases and the event is to be regarded as a casualty.
“ If the injury is due to the fault of the party injured, the liability of the party injuring is extinguished.
“ Quod quis ex sua culpa damnum, sentit, non intelligiiur sentiré.” Pomponius. Wharton, 780, 300.
The allusion made by certain writers to the Roman law, which gives a remedy in all cases of special damages, must necessarily be understood as referring to instances in which the wrong or damage is done, or inflicted by an actual wrong doing or commission of the injuring party.
*1130 The Article of the French Code, 1992, from which Article 3003 of onr R. C. C. derives, which is to the effect that the agent is responsible not only for unfaithfulness in his management, but also for his fault and mistake, contemplates an accountability to the principal only, and this by reason of the assumption of responsibility by the acceptance of the mandate. How, indeed, can an agent be responsible to a third person for the management of the- affairs of his principal, or for a mistalce committed in the administration of his property ? The responsibility for fault is likewise in favor of the “ mandant ” alone.
Tlie Napoleon Code, Art. 11G5, contains the formal pro vision that agreements have effect only on the contracting parties; they do not prejudice third parties, nor can they avail them, except in the case mentioned in Article 1121. This last Article refers to stipulations in favor of autrui, which become obligatory when accepted.
The Code of 1808 contained a corresponding article, but that of 1825 did not; neither does the Revised Code of 1870. It must not be concluded, however, that the omission to incorporate the provision in the subsequent legislation must be considered as a repudiation of the doctrine.
The distinguished compilers and framers of the Code of 1825 account, for the omission to reproduce, because the provisions were already embodied in other Articles, and might, be deemed to be exceptions to the undoubted rule that contracts can only avail, or prejudice the parties thereto. Projet du Code de 1825, p. 264.
. Quod inter alios actum est, aliis ñeque nocet, ñeque prodest. § L. 20, De instit. Act; see also, Pothier on Oblig., Nos. 85, 87; Domat, L. 1, t. If, Sec. 3, No. 8 ; L. 2, t. 8; Troplong Maud., No. 510 ; Durauton 10, No. 541; Toullier 6, 341; Toullier 7* 252, 306 ; Demolombe 25, No. 38; Laurent 10, No. 377; Larombiere, 1, 640.
That such is the case was formally recognized by the Court of Cassation of France, in the case of Thomassin, decided in July, 1869, and reported in Part 1 of Dalloz J. G. for that year. The syllabus in the case is in the words following:
“ Le mandataire n’est responsable des fautes qu’il commet dans l’exócution dn mandat, qu’envers le mandant.”
See also, J. G. Vo. ObL, Nos. 878 et seq., and Vo. Mandat, No/213.
The case of Beaugillot vs. Callemer, 33 Sircy, 322, far from expounding a doctrine antagonistical to that prevailing, as was seen, at common law, and which we consider as well settled likewise under the civil law, is fully confirmatory of the same.
It was the case of an agent condemned to pay damages for obstructing, by means of beams, a water course' partly closed up by masonry, and thus causing an overflow, in consequence of which a hay crop was *1131 damaged. The plea of respondeat superior did not avail. Tlie Court well held that the commission of the act constituted a quasi offense, in justification of which the mandate could not be set up.
This anterior view of the case relieves the Court from the necessity of passing upon the other questions presented, relative to fault, trespass, contributory negligence, suffering and damages.
Judgment affirmed with costs.